The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and its Honorable Court. Good morning. Good morning. The first case this morning is 06-3082 Cathy Ferdinand v. Department of the Treasury. Ms. Simms. Yes, Your Honor. Good morning and thank you very much. It's a privilege to be here to defend and to bring this case on behalf of my client Cathy Ferdinand. Ms. Ferdinand was fired by the IRS or removed from the IRS in July of 2002. 17 months later she was reinstated by the Administrative Law Judge in November 2003. And approximately 22 months later she was removed again by the MSPB who reversed the AJ with regard to her termination. Although both of the briefs spend a great deal of time going into some detail about the specifications with regard to her firing. I think we're really here on a very narrow issue and that is the one with regard to the MSPB, what they used to reverse the AJ. The AJ made a finding on a very narrow issue that indeed the agency failed to prove that indeed Ms. Ferdinand was incomplete in her work, which is a very narrow segment of critical element workplace management, workload management. In that regard it came around to the definition of what is use of time and completeness. She conceded that her use of time was not well done. She conceded that use of time was a problem and he found that way. The only reason he did not uphold the removal is because of the completeness element. There are two sub elements that have to be met. They did not meet the second sub element. So that's why we're actually here today with regard to whether or not the agency properly bootstrapped or properly used the exact same facts for the use of time to simply bootstrap the completeness issue underneath her completed element. I question very seriously the MSP's regard for my client's position on that matter. I think a due process is going to be given. It's just due. The employee who has been disciplined must indeed believe and it must in fact be sure that her arguments, her positions are given some deference that they be considered and either soundly rejected or accepted. And I think the final order from the MSPB does not do justice to what her position was with regard to that simple element of completeness versus non-completeness use of time and her removal from the Internal Revenue Service. The full board was free to make its own determination of the facts contrary to what the AJ may have found. Absolutely. I cannot argue with you in that regard, Your Honor. They do have a de novo. They were free to reverse. But my position is they should have done so in a written opinion that discussed my client's position and then soundly rejected them or overruled them in an opinion where it was free for the whole world to see exactly why my client. I'm sorry. As I read the full board opinion, they did say in a number of places that she didn't satisfy the completeness criteria. What I read of the opinion that bothered me was that without giving a rational explanation for why the completeness element, they didn't meet the AJ's narrow issue that completeness and use of time couldn't be used with the same factual basis to support both. I did not recall in the order that they actually responded to that. Now, they don't have to. I understand that. But it seems to me that in order to reverse what the AJ did, they should on some level say his analysis, his discussion of completeness, should have been met by the MSPB on some level in some more obvious way in the opinion. They didn't discuss... Well, isn't it sufficient that they found that the completeness requirement wasn't satisfied in a number of instances? If they reached that decision reasonably, Your Honor, if they reached that decision by considering her arguments, meeting the arguments that she proposed before the AJ, mentioning or referring in some response to the AJ's position on completeness why he found that to be insufficient, that's a real glaring element. It's something that has to be resolved on some level so that the employee herself, those reading the opinions, those looking at this as a precedent, will understand what it is they need to meet in order to sufficiently cross that hurdle. All I'm saying is that they did not discount thoroughly, they did not discount well, and they did not discount anything that could detract from their opinion. They couldn't simply bootstrap, they couldn't simply look at the opinion, make a determination that the AJ was wrong without specifically making a statement that they could. I'm saying they could make the decision, but they should have laid it out in the opinion. And at the very least, they should be forced to redo a final order in that regard and meet that issue when it comes to completeness and the definition of completeness. Did that answer your question, Your Honor? Yes, thank you. With regard to due process and the appearance of consideration and actual consideration for my client's position, she worked with the IRS for 14 years, and she was working under, at that point, a handicap with regard to her carpal tunnel syndrome. She had medical problems, had just returned to work, and met the IRS's requirements with regard to time limitations. She had six work days in order to get her files open and 35 days to complete the file. She did that with each and every one of the cases. We're not suggesting that she did not have the use of time concern, but we are suggesting that the rebuttal that she made with regard to these allegations of lack of performance should have been taken more in consideration by the MSPB, should have been addressed directly by the MSPB, and they should have, in their opinion, a written statement regarding whether or not they rejected our client's position and whether or not the AJ's position was rational or non-rational. And I think, under the circumstances, their opinion with regard to upholding the AJ, I think, is insufficient, and it was based on a true reading of whether or not there was substantial evidence to meet the completeness argument with regard to her work performance. Any further questions? Thank you. Mr. Chandler. May it please the Court. There is no bootstrapping problem in this case. The IRS's definition of completeness was completely distinct from its definition of use of time. Well, the problem that I have with the Board's opinion is I do see that they made completeness findings, that they made findings that she didn't complete work. That's right. The leap, it seems to me, is that on page 11, they say that the record shows that she seldom performed tasks completely. And while I agree that they've made findings that would support and that the record would support finding that she sometimes failed to complete tasks completely, what's the basis for the seldom finding? Well, you have to remember, Your Honor, these findings were only over a roughly two-month period. So I think in that two-month period, she seldom performed her tasks to completeness. Well, how do we know that? I mean, the fact that she sometimes didn't, how does that lead to a finding that she seldom did? Well, I think the fact that the agency found that she frequently didn't over a very short time span is suggested by the fact that she seldom did those things. That's it? I think that's enough to be substantial evidence of the fact that she seldom completed those tasks. Okay. And, of course, that's the basis of the review in this court, is whether there's substantial evidence before the board to support their finding. And I think that finding that she frequently didn't perform these tasks over the review period. And the agency is allowed to make its determination on the basis of information or evidence that was elicited during the performance improvement period, which is what it did. I mean, suppose she had 100 tasks during the period and that she failed to complete five of them. Would that support a finding that she seldom completed them? I believe it could support a finding, absolutely. Really? I mean, what we're looking at here is whether she failed workload management as a whole. And so I think that, in conjunction with the very well-documented evidence of her failures and abuse of time, is enough to show that she failed workload management as a whole. I'm not understanding how failing to complete 5 percent of her work means that she seldom performed assigned tasks completely. Well, I mean, I understand. I mean, the agency didn't undertake a review of every – her supervisor wasn't looking over her shoulder the entire time that she was working. I mean, he was reviewing her performance as he was available to do that. And he obviously doesn't – we don't know in percentage terms how many times he reviewed her performance versus how many times he found efficiencies in her performance. Exactly. That's the problem. Well, but anyway, I think that the volume of the number of times over that short time span is enough to support a finding that there was substantial evidence that she failed to perform completely. Yeah, if this were – if the finding were that she sometimes failed to perform completely or even frequently failed to perform completely, I could see that finding being based on the record. But where the board sets up a standard – I guess this is in the – is this in the PIP, the seldom – where does the seldom requirement come from? That's in the agency's performance plan. Yeah. But if they put in the performance plan a requirement of seldom, which seems to me to be a very high standard and probably an unwise standard, I mean, how do you justify a finding when there has been no study of how often she performed the tasks? How do you justify a finding that she seldom performed completely when there's no comparative data so that we don't know whether the half-dozen instances here that the board finds that she performed incompletely, how does that compare to the number of times that she was asked to do something? And, you know, how do we know? Well, again, Your Honor, I mean, really the question here is whether there's substantial evidence that she seldom performed completely. And I think, again, given that there are at least ten examples of her failures of completeness over a two-month time span, I think that that constitutes substantial evidence upon which a reasonable person could make the determination that she seldom performed completely over that time span. Do these performance plans typically have a seldom requirement? Is that the usual one? I can't say with any fear and liability what other agencies do. There are only three categories, I guess, in the plan. There's consistently, generally, and seldom. So I would assume that those three categories would cover the entire range of possibilities, wouldn't you suppose? I think that's right. I think each one picks up where the other leaves off. All right. So, I mean, in looking for guidance as to what, if there's any special meaning for the rather commonplace word seldom, I suppose that it's less than generally. I think that's right. Certainly, if the agency were to have found that she generally performed completely, then it wouldn't warrant a finding that she had failed in the area of completeness. But in any event, clearly there's no bootstrapping problem here. The agency defined those two things separately. And I think that's really the crux of Ms. Fernand's argument, is that the agency was considering things that really related to use of time as completeness issues. And, in fact, Ms. Fernand acknowledged in page 17 of her reply brief that the evidence that the agency used to find completeness was sufficient. She says that looking at the agency's evidence in and of itself, that's enough to warrant a finding of completeness. So she's not arguing that point. Where does she say this? Page 17 of her reply brief. 17? That's right. Where do I point out? At the very last paragraph, the first sentence reads, the board based its final work on evidence which in and of itself justified it. And her only argument is that the board should have considered countervailing evidence, that she presented. But if you read her brief, she only revised two of the specifications with regard to completeness. Any questions? Anything further? I'm sorry. I'm just going to report some documents for just one moment. I'm going to try to find the two areas where she did actually in her brief attempt to rebut the allegations of completeness. With regard to Specification 21, that involved an instance where there was a law research heading, a law slash research heading in one of her working papers that contained a cross-reference to another working paper. But if you look at the other working paper, there's no citation to any of that work or research. So that would evidence that a better of hers to complete or to maintain a complete work file or to maintain a complete working paper. And her rebuttal is, in Ms. Fernandez's brief, is that she had decided to wait until she received a response from the taxpayer before she updated her working papers. But as Task 4 in the agency's performance plan says, the work of an agent is to be completed as information becomes available. So clearly that is a failure of completeness with respect to Task 4, and the Board was free to reject Ms. Fernandez's explanation on that score. The other instance is with respect to Specification 7. In that specification, Ms. Fernandez sent a letter to the taxpayer requesting a modification to their articles of incorporation, but that modification had already been made to their articles, and so that reflects a failure on Ms. Fernandez's part to have undertaken a complete and thorough review of the record. Her rebuttal in her brief simply points out that there's a reference to May 5th, and there's a reference to activity having occurred on May 5th in the Notice of Proposed Removal, but she wasn't actually assigned the case until May 7th. And I think that pretty clearly was a clerical error. It certainly doesn't undermine the strength of that specification with respect to Ms. Fernandez's completeness. And Mr. Posket's affidavit corrects that error as well. So I think, again, that those are the only two rebuttals that Ms. Fernandez made with respect to completeness, and she's otherwise conceded that there was substantial evidence of completeness in that score. If the Court believes it would be helpful, we'd have to run through other examples of her failures of completeness, but otherwise we would ask the Court to affirm the judgment that payments can be made on the basis of our reason. Thank you. My point, like Ms. Fernandez, like other members of the Internal Revenue Service, are quite meticulous in the work that they do. They are sometimes meticulous maybe even to a fault. Did you raise the argument that the record doesn't satisfy or constitute substantial evidence on the seldom point? I didn't talk about it in terms of seldom, Your Honor. I did not. I did not meet that directly. What I did overall in the brief was to indicate the minutia with which they terminated my client and the arguments that Mr. Posket made in his affidavit with regard to what she did and did not do. For instance, the letter for the bad check. He said she looked for the letter for two hours instead of doing something else, i.e. asking him for the letter. The problem is he didn't have the letter either. They never had, apparently, a bad check in the IRS in the plantation office, so they had to call Cincinnati to get a copy of the bad check. I don't consider that incomplete. I don't even consider it necessarily a use of time. Maybe you and I would have stood up immediately and said, Who's got a letter for a bad check? But she looked around, searched around to find one, finally going to Mr. Posket, saying, I can't find one. The typographical error that may have occurred with regard to Specification 27, the one that Mr. Chandler just brought up, that was clearly, and I can accept the argument, that that was a typographical error. Yet he cannot accept the fact that my client's failed to make a citation in one of her determination letters, which she corrected within the 35-day period, could have been an error. We all make errors, we all make mistakes, but there is no allegation whatsoever that my client ever sent out a bad determination letter. That never happened. The way the structure is at the plantation office, and I suspect around the country, is that the IRS won't let bad determination letters go out. No one suggests that she ever came to the wrong conclusion, that a letter went out that should not have gone out, that misspoke the law. There was a letter that went out that told her client, we don't have your articles of incorporation, and they sent back, yes, you do, on a phone call. And she said, oh, I'm sorry, that is incorporated in your, but I'm sorry I didn't do that. We make mistakes, we make errors. It's really very, very little. If someone is standing over your shoulder, day in and day out, for the last two or three months, everyone's liable to make an error. And besides, people work at different speeds, with different knowledge, with different backgrounds. I don't quite understand how you can terminate an employee based on the kinds of errors that everybody commits on a daily basis. Nothing went wrong. The errors were caught. She corrected the errors. No bad determinations went out. We have an issue here where we have a supervisor who simply determined that she uses her time differently. She uses her time less efficiently than most other people who work there, but yet she still met the timetables of the IRS. She still met it. When she made an error, she caught it. When it was brought to her attention, she caught it. She caught many of them. She spent time on the phone with the taxpayers. She would call and say, look, this is what we don't need, this is what we do need. They called, she was available to the taxpayers. Maybe others weren't that type of efficient. Nonetheless, she completed her work. She got it done. The determinations letters went out properly, and in a couple of instances where she incorrectly got a case assigned to her that should have gone to a GS-13 agent, she properly brought that to her supervisor's attention and it was transferred up here to headquarters for a GS-13 agent. She did all that she knew to do. She did all that she was capable of doing, and the service and the efficiency of the service was not decreased by virtue of the fact of the two or three or four errors that she committed. While she worked there, having come back from a disability, having come back from surgery on her arms, and having come back from medical leave, she completed those cases. We looked at it, we analyzed as best we could the time limits that she had, and she was a couple of hours over other agents, but within an acceptable time limit, and she met her within 35 days, that's what she was supposed to do, and that's what she indeed did. I do not believe that there was sufficient evidence to reverse the A.J.'s ruling, and I would argue that my client should be returned to work, or at the very least, that the MSPB be given instructions to make a more thorough finding argument, final word, considering her arguments, and rejecting those arguments as they see fit with substantial rationalization for that. Thank you very much. Thank you.